UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

LOCAL #1674 OF HOWARD MENTAL      :
HEALTH, A SUBORDINATE BODY OF     :
COUCIL 93 OF THE AMERICAN         :
FEDERATION OF STATE, COUNTY       :
AND MUNICIPAL EMPLOYEES           :
AFL-CIO a/k/a AFSCME LOCAL        :
#1674,                            :
                                  :
            Plaintiff,            :
                                  :     Case No. 2:14-cv-67
v.                                :
                                  :
HOWARDCENTER, INC.,               :
                                  :
            Defendant.            :


**OPINION AND ORDER**

Plaintiff Local #1674 of Howard Mental Health ("the Union")
brings this action against Defendant HowardCenter, Inc.
("HowardCenter") for its alleged failure to properly apply state
Medicaid funds.  The Union submits that the state appropriations
included a specific directive that they were to be paid to the
employees represented by the Union, and brings claims of unjust
enrichment, breach of trust, and conversion under Vermont law.
This action was originally filed in state court and Defendant
removed, asserting that because Plaintiff is a union operating
under a Collective Bargaining Agreement ("CBA") with Defendant,
the state action is completely preempted and displaced by

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Plaintiff has now moved to remand the case back to state court for lack of subject matter jurisdiction.  Defendant has moved to dismiss the action in its entirety under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, again on the grounds that the state law claims are preempted by federal law.  Because the Court finds that the claims are not completely preempted by the LMRA, and therefore there is no federal question creating subject matter jurisdiction, the Court **grants** Plaintiff's motion to remand, ECF No. 22.  Because the Court has no jurisdiction over this action, Defendant's motion to dismiss, ECF No. 5, is **denied** as moot.

### BACKGROUND[1]

The Union is a subordinate body of AFL-CIO and the designated legal representative of all permanent and full-time employees and permanent part-time employees ("Represented Employees") of Defendant HowardCenter in the defined bargaining unit as certified by the National Labor Relations Board ("NLRB").  Defendant HowardCenter is a Vermont nonprofit

---

[1] The following facts are taken from Complaint and the Collective Bargaining Agreement.  The Court may consider the Complaint including "any statements or documents incorporated into it." *Paulemon v. Tobin*, 30 F.3d 307, 308-09 (2d Cir. 1994). Here, the Complaint specifically references the parties' CBA.  Compl. ¶¶ 8-11.  All facts in the Complaint are assumed to be true for purposes of a Rule 12(b) motion.

corporation and health care provider located in Burlington,
Vermont.  HowardCenter contracts with the State of Vermont to
provide Medicaid services and receives State Medicaid funds for
its services as appropriated by the Vermont Legislature.

**I. Collective Bargaining Agreement**

The Union negotiated a CBA with HowardCenter effective July
1, 2012, through June 30, 2014.  The CBA governs the terms and
conditions of employment for all HowardCenter employees
represented by the Union.  Article V of the CBA establishes the
wages, salaries, and compensation bargained for by the Union and
agreed to by the parties.  Section 501.B of this article
provides:

> a. Effective 7/01/2012 the Agency will increase each non-
>    probationary covered employee's base in the amount of $.35
>    per scheduled hour;
> b. Effective 7/01/2013, all non-probationary covered staff
>    will receive a 1.6% increase to base salary.

CBA 16.  Appendix B of the CBA addresses the minimum and maximum
salary levels for employees.  The CBA further provides that it
addresses all subjects of bargaining:

> The parties acknowledge that during the negotiations which
> resulted in this Agreement, each had unlimited right and
> opportunity to make demands and proposals with respect to
> all proper subjects of collective bargaining and that all
> such proper subjects have been discussed and negotiated
> upon and that except as otherwise provided herein, the
> Agreement shall not be subject to reopening unless mutually
> agreed.

*Id.* at 7.  Article I, Section 106 of the CBA directs that the "rights and privileges" created by the CBA are enforceable only pursuant to the terms and conditions established by the Agreement itself, *id.*, and that all disputes arising over "a violation, misinterpretation, or misapplication of" its terms shall be subject to the grievance and arbitration procedures established by the CBA.  *Id.* at 29.

## II.    Act 50 Appropriations

HowardCenter is reimbursed for its Medicaid services through the State Medicaid budget.  The State Medicaid budget is annually appropriated by the Vermont Legislature.  Vt. Stat. Ann. tit. 33, § 1901a.  In May 2013, the Legislature passed Act 50, the appropriations act for fiscal year 2014.  Section E.307.2 of Act 50, "Reduction in Medicaid Cost-Shift," provides that "[b]eginning on November 1, 2013, the Agency of Human Services shall increase Medicaid reimbursements to participating providers for services provided by an amount equal to three percent of fiscal year 2012 expenditures for those services." E.307.2(a).  The Act further provides that "[r]evenue generated from the Medicaid rate increase in this act shall be used by designated agencies and specialized service agencies to provide a commensurate increase in compensation for direct care workers." E.314.5. Act 50 requires that each designated and

specialized service agency report to the Agency of Human Services how it has complied with this provision.  *Id.*[2]

HowardCenter is entitled to and has accepted the additional three percent in funds appropriated under Act 50.  Compl. ¶¶ 7, 16.  However, according to Plaintiff, it has not provided a commensurate increase in compensation to its direct care workers.  A substantial portion of the Union's Represented Employees are direct service providers to Medicaid recipients ("Qualified Represented Employees").  The crux of the Union's Complaint is that HowardCenter is required to use the additional funds under Act 50 to increase the compensation for the Qualified Represented Employees, and that it has not met these requirements despite accepting the increase in reimbursements.

The Union filed an action in the Chittenden Superior Court on March 7, 2014, bringing claims of unjust enrichment, breach of trust, and conversion under state law.  Compl. ¶¶ 28-29, 33-39.  As relief, the Union seeks an accounting of the funds received as a result of Act 50, declaratory judgment finding that HowardCenter is required to pay an additional three percent to direct service providers, and an injunction requiring HowardCenter to pay the increase in reimbursements directly to

---

[2] In February 2014, the Supplemental Appropriations Act amended this language to provide that agencies "shall provide an increase in compensation for direct care workers that is in proportion to the Medicaid rate increase."  Act No. 95 (2013 Adj. Sess.), § 76.

the direct service providers.  Defendant removed the case to this Court on April 7, 2014, asserting federal jurisdiction based on § 301 of the LMRA, 29 U.S.C. § 185.

## DISCUSSION

There are two motions currently pending before the Court. Defendant has moved to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted on the ground that it is preempted by federal labor law.  Plaintiff has moved to remand the case to state court for lack of subject matter jurisdiction.  Because the disposition on the motion to remand will determine whether this Court has jurisdiction to decide the motion to dismiss, the Court addresses the motion to remand first.

## I.  Motion to Remand

Defendant removed this case in April 2014, asserting federal jurisdiction based on complete preemption under § 301 of the LMRA.  A defendant may remove an action filed in state court to federal court if the case could have originally been filed in federal court.  28 U.S.C. § 1441(a).  A case may be filed in federal court "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  A federal question is presented where a civil action arises under federal law.  28 U.S.C. § 1331 ("The district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). As the removing party, Defendant "bears the burden of establishing jurisdiction." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006).

In this case, there are no federal questions on the face of the complaint; instead, all of Plaintiff's claims are grounded in state law. Defendant nonetheless maintains that federal jurisdiction exists because the state law claims are completely preempted by federal law. Because preemption is usually a defense to suit (and therefore necessarily does not appear on the face of the complaint), a defendant "generally may not remove an action on the basis of federal preemption." *Franklin H. Williams Ins. Trust v. Travelers Ins. Co.,* 50 F.3d 144, 147 (2d Cir. 1995). However, the Supreme Court has recognized a limited exception to this rule in cases of "complete preemption"—that is, "when Congress has so completely preempted an area of law that any civil complaint is necessarily federal in character." *Domnister v. Exclusive Ambulette, Inc.*, 607 F.3d 84, 88 (2d Cir. 2010). Under the complete-preemption doctrine, "certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims." *Sullivan v. Am.*

*Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005).  In such cases, a court is "obligated to construe the complaint as raising a federal claim and therefore 'arising under' federal law."  *Id.*  Remand in this case thus turns on whether Plaintiff's state law claims are "completely preempted" by federal law.

### A. Section 301 Preemption

The Supreme Court has expressly designated Section 301 as one of the rare[3] statutes bestowed with the "unusual preemptive power" that creates federal jurisdiction over state law claims. *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 558–62 (1968). When § 301 preempts a state law claim, federal jurisdiction may be established "even when the plaintiff's complaint makes no reference to federal law and appears to plead an adequate state claim."  *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) (citing *Livadas*, 512 U.S. at 122 n.16).  As a result, if the Court finds Plaintiff's state law claims are "preempted by section 301, federal jurisdiction exists and the removal of [the Union's] case was proper."  *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997).

---

[3] So rare is this circumstance that the United States Supreme Court has found it only three times: in § 301 of the LMRA; § 502(a) of the Employee Retirement Income Security Act ("ERISA"); and §§ 85 and 86 of the National Bank Act.  *Sullivan*, 424 F.3d at 272.

Section 301 establishes federal jurisdiction over "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce" without respect to the amount in controversy or citizenship of the parties. *Id.* While the text of § 301 is jurisdictional, the Supreme Court has interpreted this provision as "doing more than confer jurisdiction in the federal courts over labor organizations . . . [instead,] it expresses a federal policy that federal courts should enforce [Collective Bargaining Agreements] on behalf of or against labor organizations." *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 455 (1957). The Supreme Court has extended § 301 preemption to claims where "resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)).

Although the preemptive scope of section 301 is significant, the Supreme Court has repeatedly cautioned that such preemption does not apply *every* time a CBA is "tangentially" implicated. *Lingle v. Norge Division of Magic Chef*, 486 U.S. 399, 413 n.12 (1988). Instead, "if a state prescribes rules or establishes rights and obligations that are independent of a labor contract, actions to enforce such independent rules or rights would not be preempted by section

301." *Vera*, 335 F.3d at 115 (citing *Allis-Chalmers Corp.*, 471 U.S. at 212).

To determine whether a claim is preempted, and hence removable, the Supreme Court has said that "an application of state law is pre-empted by § 301 . . . if such application requires the *interpretation* of a collective-bargaining agreement." *Lingle*, 486 U.S. at 413 (emphasis added). The *Lingle* Court specifically cautioned against applying § 301 preemption too broadly, stating:

> A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled. Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state-law claim, not otherwise pre-empted, would stand. Thus, as a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective bargaining agreement and a separate state-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby preempted. . . . [N]ot every dispute . . . tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301.

*Lingle,* 486 U.S. at 413 n.12 (quotation and citations omitted). A state law claim is "independent" of a CBA for § 301 preemption purposes if "the state-law claim can be resolved without interpreting the agreement itself." *Wynn v. AC Rochester*, 273 F.3d 153, 158 (2d Cir. 2001). As a result, a claim that

requires mere consultation of a CBA is not necessarily preempted. *See Livadas*, 512 U.S. at 124 ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state law litigation plainly does not require the claim to be extinguished.").

Here, Defendant argues[4] that the Complaint is completely preempted by § 301 because the state law claims implicate the CBA between the parties.  29 U.S.C. § 185.  Thus, the question to be determined here is whether Plaintiff's claims under Act 50 are dependent upon an analysis of the CBA between the parties such that these claims "necessarily arise under" federal law.

### i. Plaintiff's interpretation of Act 50 does not require an interpretation of the CBA

The Union alleges that Defendant failed to pay the Qualified Represented Employees money specifically devised to them by the Vermont Legislature under Act 50.  Thus, on its face, the Complaint does not assert that Defendant violated the CBA.  This action does not arise under the CBA nor does it seek to enforce it.  However, Defendant argues that § 301 still preempts the Complaint because, in its view, the claims under Act 50 require "interpretation" of the CBA.  Specifically,

---

[4] Defendant's preemption arguments under § 301 are primarily raised in the motion to dismiss.  Because this inquiry is identical in the remand and dismiss contexts, Defendant's arguments will be considered in the discussion regarding the motion to remand.

Defendant contends that because employee compensation and raises are addressed in the CBA, and because the CBA stipulates that it represents the exclusive rights and obligations of the parties on all of the subjects addressed within the Agreement, Plaintiff's claim that the Qualified Represented Employees should receive additional compensation under Act 50 necessarily involves the CBA.  Defendant also notes that Plaintiff's claims will require reference to the pay rates set out in the CBA, and that HowardCenter anticipated increased funding from the state when it negotiated these rates.  In response, Plaintiff maintains that its claims are independent of the CBA and at most would require limited reference to the CBA rather than an "interpretation" such to implicate § 301 preemption.

While the boundary between claims requiring "interpretation" of a CBA and those requiring mere "consultation" is "elusive," *Wynn*, 273 F.3d at 158, the existing case law makes clear that mere parallelism between the facts and issues to be addressed under a state law claim and those to be addressed under § 301 does not render the state-law analysis dependent on the collective bargaining agreement.  In *Lingle*, the plaintiff was an employee covered by a CBA that provided a contractual remedy for discharge without just cause.  The question presented was whether her state law claim for retaliatory discharge was preempted by § 301, as the CBA in

12

question established a procedure for arbitration of disputes concerning "the effect, interpretation, application, or claim of a breach or violation" of the CBA.  486 U.S. at 402.  The Supreme Court found that the state law retaliatory discharge claim was not preempted by § 301 because none of the elements of the state law claim required the court to interpret any terms of the CBA; thus, the state law claim was "independent" of the CBA. *Id.* at 411.

The holding in *Lingle* contrasts with cases where preemption was found because the state law claim depended on an interpretation of the CBA's terms.  For example, in *Anderson v. Asset Corp.*, the Second Circuit considered whether § 301 preempted a state law claim for tortious interference where the alleged interference was *with a CBA*.  416 F.3d 170 (2d Cir. 2005).  Because the determination of whether the CBA had been interfered with necessarily required the court to construe the scope of the CBA itself, the court found that the tortious interference claim was not independent of the CBA and therefore preempted by § 301.  Similarly, in *Vera*, the complaint challenged the legality of a term in the CBA; thus, the court found that the claim would require "substantial interpretation" of the CBA establishing § 301 preemption.  335 F.3d at 115.

Plaintiff's claims here are based on the requirements set by the Legislature in passing Act 50.  The determinative

13

question will be whether the act requires HowardCenter to direct the newly appropriated funds to a certain class of employees. Defendant makes several arguments that this determination will necessarily require an interpretation of the CBA's terms. However, none of these arguments demonstrate that Plaintiff's claims depend upon a construction of the CBA such to implicate complete preemption under § 301.

First, Defendant asserts that Plaintiff's claims will require a court to consult the CBA to determine which employees fall within the class of direct service providers contemplated by Act 50, in order to decide which employees qualify for a pay increase under the statute. However, this class of employees will not be determined by reference to the CBA, as it is a state-designated class of employees, not one determined by the contract between HowardCenter and the Union. As counsel for Plaintiff pointed out at the motions hearing, Act 50's requirements are "agnostic" as to whether the recipient of the reimbursements has a CBA. While Act 50 and the CBA may both address classes of employees, this parallelism does not require interpretation of the CBA, as the Union could make its arguments under Act 50 regardless of whether the parties operated under a CBA or not. Thus, the Union's claims are not reliant on the terms of the CBA as in *Anderson* or *Vera*, and are instead "independent" of the CBA as in *Lingle*.

14

Defendant also argues that Plaintiff's claims are dependent on the CBA because the parties already bargained for wages and raises when it negotiated the CBA. However, the Second Circuit has made clear that if a state prescribes rules or regulations that are independent of a labor contract, actions to enforce such rules are not preempted by § 301. *Vera*, 335 F.3d at 115. A federal district court in this circuit found that this remains true even when the regulations address subjects that have been discussed in an existing CBA. *See Alderman v. 21 Club, Inc.*, 733 F. Supp. 2d 461, 467-68 (S.D.N.Y. 2010).

*Alderman* concerned a New York statute that required a 20% gratuity for certain service employees. Before the statute was passed, the parties operated under a CBA that required only an 18% gratuity. After the statute was passed, the plaintiffs brought an action under state law seeking the 2% difference. The court found that the claim for 20% gratuity did not depend upon an interpretation of the CBA even though the gratuity rate had clearly been addressed and bargained for in the preexisting CBA. The similarities to the instant case are obvious. Here, the parties bargained for wages and raises in promulgating its CBA. In passing Act 50, the State added additional obligations separate from those bargained for under the CBA. As in *Alderman*, the state law claims based on Act 50 are not preempted because even though the CBA contained provisions regarding

15

wages, the Act 50 requirements are separate from the CBA and do not depend on construction of its terms.

Defendant also notes that, to adjudicate the claims under Act 50, a court may have to refer to the CBA in order to determine the actual amount of wage increase implicated by the Act.  While certainly possible, the Supreme Court has found that the "simple need to refer to the bargained-for wage rates" to determine the appropriate remedy does not amount to an "interpretation" of the CBA implicating § 301 preemption. *Livadas*, 512 U.S. at 125.  Instead, the Court has declined to find § 301 preemption in cases where the state law claim requires a referral to the CBA for rate of pay, recognizing that a CBA may contain information that might be helpful in determining damages in a state law suit.  *See id.* at 124 ("not every dispute . . . tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301").  Thus, the fact that a court may reference the CBA's salary rates to determine the increase required by Act 50 is not sufficient to warrant § 301 preemption.

Finally, Defendant argues that the Union's construal of Act 50 preempted because HowardCenter anticipated the increase in funding from the state when it promulgated the CBA, and that the required increase was already addressed, in whole or in part, when the parties reached their bargaining agreement.  This

16

argument does not sustain preemption for two reasons.  First, Defendant cannot seriously contend that this wage increase was bargained for or away in the CBA as it is derived from reimbursements that did not exist at the time the CBA was enacted.  Second, even if this were the case, this would make the CBA at most a defense to Plaintiff's suit.  "Complete preemption" under § 301 is implicated only when the plaintiff's *claim* is "substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 394.  The federal jurisdiction-creating power of § 301 is not implicated when "the employer raises only a *defense* that requires a court to interpret or apply a collective-bargaining agreement." *Id*. at 398 (emphasis added) (finding that "the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule").  Therefore, the Union's claims under Act 50 do not rely upon an interpretation of the CBA such to implicate complete preemption under § 301.

### ii. None of Plaintiff's state law causes of action require an interpretation of the CBA

Defendant also specifically argues that each of the three state law causes of action Plaintiff brings—unjust enrichment, conversion, and breach of trust—require an interpretation of the CBA such to implicate § 301 preemption.  In support, Defendant

cites case law finding § 301 preemption in cases regarding those types of state law claims.  However, none of these cases support a finding of complete preemption under § 301.

First, Defendant argues that the unjust enrichment claim requires interpretation of the CBA.  To prove unjust enrichment under Vermont law, a plaintiff must establish (1) that a benefit was conferred on the defendant; (2) the defendant accepted the benefit; and (3) it is inequitable to allow the defendant to retain the benefit.  *Akerley v. North Country Stone, Inc.*, 620 F. Supp. 2d 591, 602 (D. Vt. 2009) (citing *Johnson v. Harwood*, 945 A.2d 875 (Vt. 2008)).  Plaintiff's unjust enrichment theory posits that the HowardCenter was unjustly enriched when it accepted Medicaid funds from the State and did not use them to increase the compensation of direct service providers as directed.  Defendant argues that the determination of whether there was unjust enrichment here requires reference to the CBA, and that the claim would qualify as a "violation, misinterpretation, or misapplication" of the terms of the CBA subject to its arbitration and grievance procedures.  However, this is plainly not a claim arising under the CBA, and does not involve a "violation, misinterpretation, or misapplication" thereof.

Furthermore, while Defendant cites several out-of-circuit cases where state unjust enrichment claims were found preempted

by § 301, they are all inapposite here.  *See, e.g.*, *Moon v. Goodyear Tire & Rubber Co.*, 519 F. App'x. 620 (11th Cir. 2013); *Cavallaro v. UMass Memorial Healthcare, Inc.*, 678 F.3d 1 (1st Cir. 2012).  For example, *Moon* involves an unjust enrichment claim grounded in reliance on a buyout provision *in a CBA*.  519 Fed. Appx. at 624.  Similarly, in *Cavallaro*, the First Circuit found § 301 preempted an unjust enrichment action based on the theory that plaintiffs had not been paid the wages they were owed pursuant to a CBA.  678 F.3d at 5.  Thus, the state law claims in *Moon* and *Cavallaro* relied on the terms of the CBA in a way that is not present here.[5]  By contrast, Plaintiff's claim for unjust enrichment relies on a construal of HowardCenter's obligations under Act 50 and does not require an interpretation of the CBA other than to (possibly) determine the full amount

---

[5] The remaining cases cited by Defendant are similarly unavailing.  *See Shearon v. Comfort Tech Mechanical Co.*, 936 F. Supp. 2d 143, 153-54 (E.D.N.Y. 2013) (finding § 301 preempted unjust enrichment claim that "hinge[d] on rights created by the CBA" and were "inextricably intertwined" with its terms); *Jones v. C & D Technologies, Inc.*, 1:11-CV-01431-JMS, 2012 WL 3756549, *4 (S.D. Ind. Aug. 28, 2012) (finding preemption where court must consult CBA to determine "whether employer owed wages in the first instance"); *Carter v. Tyson Foods, Inc.*, 3:08-CV-209, 2009 WL 4790761, *8 (N.D. Ind. Dec. 3, 2009) (finding preemption where claim would "require a robust and involved analysis of the CBA"); *Goss v. Firestone Polymers, L.L.C.*, CIV.A. 1:04-CV-665, 2005 WL 1004717 (E.D. Tex. Apr. 13, 2005) (finding preemption over *quantum meruit* claim where claim was "merely . . . a rephrased claim for employee benefits" under the CBA); *McCarty v. Reynolds Metals Co.*, 883 F. Supp. 356, 361 (S.D. Ind. 1995) (finding unjust enrichment claim preempted where required interpretation and application of CBA).

owed.  Again, the fact that a CBA may be referred to does not
make the claim inextricably linked to the CBA.

Defendant fares no better with regard to Plaintiff's breach
of trust claim.  Under this claim, Plaintiff argues that the Act
50 funds were held in a constructive trust by HowardCenter for
the direct service providers.  "A court may impose a
constructive trust when "a party obtains some benefit that they
cannot, in good conscience, retain." *Weed v. Weed*, 2008 VT 121,
¶ 17, 968 A.2d 310, 315.  Courts may employ such constructive
trusts to avoid unconscionable results and to prevent unjust
enrichment.  *Preston v. Chabot*, 412 A.2d 930, 933 (Vt. 1980).
Plaintiff's constructive trust claim therefore will require a
court to determine whether Act 50 funds rightly belong to the
Qualified Represented Employees.  In making this determination,
the court will have to look to the statutory text; however, it
will not require an interpretation of the terms of the CBA.
Again, while HowardCenter argues that it already anticipated an
increase in Medicaid funding when it negotiated the CBA, this is
a defensive theory and does not preempt Plaintiff's claims.

As in the unjust enrichment context, the case law Defendant
cites does not support finding preemption over the breach of
trust claim.  Defendant cites a Sixth Circuit case finding
breach of trust claims preempted by § 301.  *See Central States
Southeast and Southwest Areas Pension Fund v. Kraftco, Inc.*, 799

F.2d 1098, 1108-09 (6th Cir. 1986).  However, again, the case is easily distinguishable from the instant one.  In *Central States*, the breach of trust claim involved a trust agreement that incorporated the terms of the CBA, and the claim therefore depended on an analysis of the CBA such to compel § 301 preemption.[6]  By contrast, Plaintiff's breach of trust claim does not depend on the relationship between Plaintiff and Defendant, or on the agreement between them, but only on whether Act 50 requires certain appropriations to be used for a particular purpose.  This is necessarily the case as Act 50's requirements apply to both unionized and non-unionized employees.

Finally, Plaintiff's conversion claim is also not preempted by § 301.  On this claim, Plaintiff alleges that HowardCenter converted money that properly belongs to the Qualified Represented Employees as required by Act 50.  In order to establish a claim for conversion under Vermont law, "the owner of property must show only that another has appropriated the property to that party's own use and beneficial enjoyment, has

---

[6] In this section, Defendant also cites *several* cases where courts found § 301 preemption with regard to breach of fiduciary duty claims, on the grounds that reference to the CBA was necessary to determine whether a duty of care existed and to define the nature and scope of that duty.  Defendant argues that these cases control because any breach of trust must involve a fiduciary relationship.  However, Defendant cites no support for this position; a fiduciary relationship is not required for a court to impose a constructive trust.  Thus, these cases should not alter the Court's conclusion on the breach of trust claim.

21

exercised dominion over it in exclusion and defiance of the owner's right, or has withheld possession from the owner under a claim of title inconsistent with the owner's title." *Montgomery v. Devoid*, 2006 VT 127, ¶ 12, 915 A.2d 270, 275 (internal quotations omitted).  Defendant argues that § 301 preempts the conversion claim because it will require an interpretation of the CBA in order to determine the parties' rights and obligations regarding employee compensation.  However, the conversion claims only require an interpretation of Act 50 to determine whether the funds in question truly belong to the Qualified Represented Employees; the CBA is not implicated in this determination.  Defendant again argues that "whether [the parties] intended the CBA to account for the Act 50 funds in question" will require a look at the CBA.  however, the CBA predates Act 50, and thus there can be no question whether the CBA accounts for the Act 50 funds, as they did not exist at the time the CBA was enacted.  Any argument that HowardCenter already accounted for these funds in the CBA is a defensive application of the CBA and therefore does not preempt the state law claims for subject matter jurisdiction purposes.

In support of its position, Defendant cites several cases finding state law conversion claims preempted by § 301.  *See Williams v. George P. Reinties Co.*, 361 F.3d 1073, 1074 (8th Cir. 2004) (Section 301 preempted claim that defendant converted

22

moneys that should have been paid to Union according to terms of CBA); *McCormick v. AT&T Technologies, Inc.*, 934 F.2d 531, 537 (4th Cir. 1991) (Section 301 preempted conversion claim that required "recourse to the [CBA]"); *Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 444 (D.N.J. 2011) (finding § 301 preemption over conversion claim that turned on interpretation of CBA). However, in each of these cases, plaintiffs' conversion claims were reliant on interpretations of the CBA. Here, Plaintiff would make the same conversion argument whether the CBA existed or not. Thus, this case is distinguishable, and the conversion claim, which requires at most a limited consultation of the CBA, is not preempted by § 301.

Because none of Plaintiff's state law claims, nor its theory of Act 50, is dependent upon an interpretation of the CBA between the parties, the Complaint is not completely preempted by § 301. Therefore, federal question jurisdiction cannot be established by § 301 complete preemption.

### B. NLRA Preemption

Defendant also argues that Plaintiff's claims are preempted by the NLRA.[7] The NLRA arguments are ultimately academic,

---

[7] Although the NLRA contains no express preemption provision, the Supreme Court has held that "Congress implicitly mandated two types of preemption as necessary to implement federal labor policy." *Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60, 65 (2008). These types of preemption are known as *Machinists* preemption and *Garmon* preemption. *Machinists* preemption forbids the NLRB and the States from regulating conduct that Congress intended to be left to the free play of economic

however, because any finding of NLRA preemption has no impact on this Court's subject matter jurisdiction.  NLRA preemption does not arise to the level of "complete preemption" required for removal jurisdiction.  *See Sullivan*, 424 F.3d at 272 (explaining that "the complete-preemption doctrine must be distinguished from ordinary preemption, also known as defensive preemption").  The Supreme Court has made clear that a plaintiff's suit does not arise under federal law simply because the defendant may raise the defense of ordinary preemption.  *See Caterpillar,* 482 U.S. at 393 ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.")

Neither the Supreme Court nor the Second Circuit has found that NLRA preemption constitutes "complete preemption."  Instead, the Supreme Court has said that "the fact that [a] defendant might ultimately prove that a plaintiff's claims are

---

forces.  *See Lodge 76 Int'l Ass'n of Machinists & Aerospace Workers v. Wis. Empl. Rels. Comm'n, et al.*, 427 U.S. 132, 140 (1976).  *Garmon* preemption precludes state interference with the NLRB's interpretation and enforcement of the NLRA's regulatory scheme, and thus forbids State regulation of "activity that the NLRA protects, prohibits, or arguably protects or prohibits."  *Brown*, 554 U.S. at 65; *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959).  As will be explained below, neither type of NLRA preemption has been found to constitute "complete preemption" by federal courts in this circuit.

pre-empted under the NLRA does not establish that they are removable to federal court." *Caterpillar*, 482 U.S. at 398 (finding that the employer asserting NLRA preemption may "raise this question in state court"). Similarly, while the Second Circuit has not directly ruled on whether the NLRA is subject to complete preemption, it has found removal improper based on a preemption defense under the Railway Labor Act, a "statute similar to the NLRA in many respects." *Domnister*, 607 F.3d at 91; *see also Sullivan*, 424 F.3d at 277.

Moreover, every district court in this circuit to assess the jurisdictional impact of NLRA preemption has declined to find that NLRA preemption amounts to the "complete preemption" required for removal. *See, e.g.*, *Alcantara v. Allied Properties, LLC*, 334 F. Supp. 2d 336, 344 (E.D.N.Y. 2004) (finding that "*Machinists* preemption does not constitute the 'extraordinary' circumstance justifying complete federal preemption"); *TKO Fleet Ents. v. District 15, Int'l Ass'n of Machinists & Aerospace* Workers, 72 F. Supp. 2d 83, 87 (E.D.N.Y. 1999) (collecting cases and finding that the "lower courts have uniformly held that defendants may not remove state claims to federal court by alleging *Garmon* preemption"). This conclusion has been echoed by federal courts in other circuits. *See, e.g.*, *Hernandez v. Harvard Univ.*, CIV.A. 12-11978-DPW, 2013 WL 1330842 (D. Mass. Mar. 28, 2013) ("Defensive preemption under the NLRA,

25

unlike 'complete preemption' under the LMRA, does not provide a basis for federal jurisdiction."); *Hahn v. Rauch*, 602 F. Supp. 2d 895, 909-10 (N.D. Ohio 2008) (finding that removal of state law claims cannot be sustained on the basis of NLRA preemption); *Baldwin v. Pirelli Armstrong Tire Corp.*, 927 F. Supp. 1046, 1052 (M.D. Tenn. 1996) (finding that NLRA preemption is not enough to remove state claims to federal court under the complete preemption doctrine).

Given that the Supreme Court has cautioned that "the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court," *Marcus v. AT&T Corp.,* 138 F.3d 46, 54 (2d Cir. 1998) (quoting *Metropolitan Life,* 481 U.S. 58, 68 (1987)(Brennan J., concurring)), this Court finds that NLRA preemption does not provide a basis for removal jurisdiction. Defendant's arguments regarding NLRA preemption are therefore irrelevant to the Court's subject matter jurisdiction inquiry.

Because Plaintiff's claims are not completely preempted by § 301 and no federal questions arise on the face of the Complaint, this Court does not have removal jurisdiction and the case must be remanded to state court for further proceedings. As the Court does not have jurisdiction, it will not address the merits of Defendant's NLRA preemption arguments. These arguments are properly raised before a judge in state court.

**II.   Motion to Dismiss**

Defendant has filed a motion to dismiss under Rule 12(b)(6).  Because the Court grants Plaintiff's motion to remand, the motion to dismiss is denied as moot.

**CONCLUSION**

For the reasons stated above, the Court finds that the Complaint is not preempted by § 301 and thus there is no basis for removal jurisdiction.  Plaintiff's motion to remand for lack of subject matter jurisdiction is therefore **granted**.  This action is remanded to state court and the pending motion to dismiss is **denied** as moot.

Dated at Burlington, in the District of Vermont, this 27th day of August, 2014.

<u>/s/ William K. Sessions III</u>
William K. Sessions III
District Court Judge